**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:13-CV-057-DCK**

| | |
|---|---|
| **LYNNETTE COLE,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | <u>**ORDER**</u> |
| ) | |
| **CHARLOTTE MECKLENBURG** ) | |
| **SCHOOL DISTRICT,** ) | |
| **Defendant**. ) | |
| ) | |

**THIS MATTER IS BEFORE THE COURT** on "Plaintiff's Second Motion For Summary Judgment And Memorandum Of Law In Support" (Document No. 41); "Defendant's Motion For Summary Judgment" (Document No. 47); and "Defendant's Motion To Strike Plaintiff's 'Affidavits'" (Document No. 51). The parties have consented to Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c), and these motions are now ripe for disposition. Having carefully considered the motions, the record, and applicable authority, the undersigned will <u>grant</u> the motions in part, and <u>deny</u> the motions in part.

## I.  BACKGROUND

### A.  Statement Of Facts

Plaintiff Lynette B. Cole ("Plaintiff" or "Cole") began employment with Defendant Charlotte-Mecklenburg School District ("Defendant" or "CMS") in August 2012, and was assigned to teach literacy and social studies to fourth and fifth grade students at Merry Oaks International Academy ("Merry Oaks") in Charlotte, North Carolina. (Document No. 4, p.2; Document No. 10, p.1). Plaintiff was a first-year teacher with Defendant, and purportedly her position at Merry Oaks was her first job as a classroom teacher in any school district.

(Document No. 48, p.3). Plaintiff's teaching duties began on August 27, 2012. (Document No. 4, p.2; Document No. 48, p.3). According to Plaintiff, she was subjected to "constant harassment, beginning August 27, 2012 by Philip Steffes, Principal, Tracy Hager, Assistant Principal, and Scarlett Sellers, ESL Support Staff Teacher," . . . including "daily criticism, public humiliation, bullying sabotage, and coercive acts that forced [her] to resign." (Document No. 4, p.2).

On September 17, 2012, Plaintiff allegedly "made known" to her supervisor Tracy Hager ("Hager") her "mental disability, Generalized Anxiety Disorder (GAD)." (Document No. 4, p.2). Philip Steffes ("Steffes") conducted a formal evaluation/observation of Plaintiff on September 24, 2012. (Document No. 4, p.2; Document No. 48, p.4). On September 25, 2012, Plaintiff was absent from work, purportedly due to illness. (Document No. 4, p.2; Document No. 10, p.2). Hager emailed and called Plaintiff at home on September 25, 2012. Id. A meeting was held on September 27, 2012, including Plaintiff, Steffes, and Hager. (Document No. 4, p.2; Document No. 48, p.4). The parties disagree as to whether during that meeting Steffes or Plaintiff proposed that Plaintiff should consider resigning from CMS. Id.

On or about October 1 or 8, 2012, a meeting/mediation was held between Plaintiff, Steffes, Hager, and Employee Relations Specialist Dosha Dacus ("Dacus") regarding Plaintiff's allegations against her supervisors and her request to transfer. (Document No. 4, p.3, Document No. 10, p.3). Plaintiff acknowledges that "Ms. Dacus later informed me that she required additional information regarding my disability even though my doctor had already provided her with a *diagnosis* that stipulated my disorder." (Document No. 4, p.3) (emphasis added).

Defendant contends that Plaintiff faxed three (3) pages to Dacus on October 18, 2012, including: a fax cover sheet noting a request for "an administrative transfer from Merry Oaks";

a "Request for Leave Form" completed by Plaintiff; and a "Health Care Provider Certification for Medical Leave" ("HCPC") form. (Document No. 48, p.4). Defendant further contends that Dacus emailed and placed in the mail a letter to Plaintiff on October 19, 2012, explaining that Defendant needed specific additional information to make a determination about Plaintiff's request to transfer and to identify a reasonable accommodation. (Document No. 48, p.5; Document No. 15-1, p.48). Defendant asserts that Plaintiff failed to return an "ADA Release" provided by Dacus, and "never submitted any additional medical documentation regarding her request for transfer." Id.

According to the Complaint, Plaintiff reported her "claims to CMS' Employee Relations Department" and her "harassment claim was ignored, and even with medical documentation of my disability, my request for reasonable accommodation under ADA, which was a transfer to another school, was denied by letter on November 9, 2012." (Document No. 4, p.3). Defendant acknowledges that Dacus sent Plaintiff a letter dated November 9, 2012. (Document No. 10, p.2). The purpose of the November 9, 2013 Dacus letter was to confirm the status of Plaintiff's employment with Charlotte-Mecklenburg Schools. (Document No. 47-1, p.44). That letter provides in part:

> Your request for leave under the *Family Medical Leave Act* (FMLA) has been denied. . . . it was determined you are ineligible for FMLA leave because you have not worked for CMS for 12 months prior to the beginning of your leave. . . .
>
> In addition, you requested a workplace accommodation (e.g. administrative transfer to another school location) on October 18, 2012. You submitted to my office an *HCPC* form which is the same form you submitted to HR Benefits when you were requesting a medical leave of absence. However, the form only included a diagnosis. The documentation was not certification from your physician that an administrative transfer was recommended and/or medically necessitated in connection with

your ability to continue to work as a teacher at Merry Oaks Elementary. As a result, I sent you a *Reasonable Accommodation Request* packet on October 19, 2012, requesting additional information from your physician as part of the standard process for reviewing workplace accommodation requests based upon medical need. Therefore, your request was considered a pending matter in the meanwhile. Moreover, the letter explained you were expected to return to Merry Oaks until a final determination was made either approving or denying your request. . . .

Let me add that you must understand the procedure is an interactive process with responsibilities in the hands of both employee and employer. However, you have failed to reply to my e-mail or communicate with me verbally or in writing with respect to the physician's statement and your employment status. As a result, your request for an administrative transfer is denied effective today based upon the information you have provided thus far. Your teaching position at Merry Oaks is available to you.

In a good faith effort, I previously provided you with support to help you cope with work related and personal stressors such as referral to the *Employee Assistance Program* (EAP) which is a free service to all CMS employees. I also offered to meet with you and your grade level team to help continue mediation efforts to work through the communication issues and other concerns you rose when I met with you, Mr. Steffes and Ms. Tracey Hager (Assistant Principal) on October 8th. . . .

**I will grant you a workplace accommodation for an approved leave to cover your absences from October 30, 2012 through November 19, 2012 although you are ineligible for FMLA leave. Please note these days will be charged as leave without pay unless you have available leave accruals (e.g., sick) to cover your absences through November 19th**.

With this being said, your teaching position at Merry Oaks is still available to you. You will need to return to work or voluntarily submit your written resignation **no later than November 16, 2012**.

(Document No. 47-1, pp.44-46) (emphasis in original).

Plaintiff resigned from CMS on or about November 9, 2012. (Document No. 4, p.4; Document No. 10, p.4). The "Affadavit Of Evdoxia Dacus" states that at the time of her

4

November 9, 2012 letter to Plaintiff, Dacus did not know that Plaintiff had submitted her resignation to CMS; moreover, Dacus had not communicated the decision regarding Plaintiff's request to transfer at the time Plaintiff resigned.  (Document No. 45-1, p.4).

**B.     Procedural Background**

Plaintiff's "Charge Of Discrimination" (Document No. 4-1, p.1) was submitted to the Equal Employment Opportunity Commission ("EEOC") on November 5, 2012.  (Document No. 4, p.4).  Plaintiff's "Charge…" contends she was discriminated against based on her disability "and retaliated against for engaging in protected activity, in violation of the Americans with Disabilities Act of 1990, as amended."  (Document No. 4-1, p.1).

Plaintiff's EEOC case and/or request for a "Notice Of Right To Sue" was forwarded to the United States Department of Justice on or about December 28, 2012.  (Document No. 4, p.4; Document No. 4-1, p.2).  On or about January 18, 2013, Plaintiff received a "Notice Of Right To Sue" (Document No. 4-1, p.3) from the U.S. Department of Justice.  (Document No. 4, p.4).

Plaintiff, appearing *pro se*, initiated this action with the filing of her "Complaint" (Document No. 1) against Defendant on January 28, 2013.  The Court issued an "Order" (Document No. 3) on March 11, 2013, requiring Plaintiff to amend her Complaint to include "the EEOC Notice of Charge and Notice of the Right to Sue letter so that the Court may determine the scope of this lawsuit."  Plaintiff was also "encouraged to amend her Complaint to identify the disability from which she allegedly suffers."  (Document No. 3, pp.3-4).  On March 15, 2013, Plaintiff filed an "Amended Complaint" (Document No. 4).  The "Answer Of Defendant Charlotte-Mecklenburg Board Of Education" (Document No. 10) was filed on July 3, 2013.

On July 17, 2013, the parties filed their "Certification And Report Of F.R.C.P. 26(f) Conference And Proposed Discovery Plan" (Document No. 11) and "Joint Stipulation of

Consent to Exercise Jurisdiction by a United States Magistrate Judge" (Document No. 12). The undersigned issued a "Pretrial Order And Case Management Plan" (Document No. 14) on July 26, 2013. The "Pretrial Order…" set case deadlines as follows: discovery – December 1, 2013; mediation – December 15, 2013; motions – January 15, 2014; and trial June 16, 2014. (Document No. 14).

On August 27, 2013, Plaintiff filed her first "…Motion For Summary Judgment And Memorandum Of Law In Support" (Document No. 15). The Court denied "Plaintiff's Motion For Summary Judgment…" without prejudice, on August 28, 2013. (Document No. 17). The undersigned opined that

> Under the circumstances, the undersigned finds that Defendant should be allowed to proceed with discovery. Moreover, the undersigned is not persuaded that Plaintiff will suffer any significant prejudice by cooperating in discovery, or by having her motion for summary judgment dismissed, without prejudice to re-file at a later date, following the completion of discovery and mediation.

(Document No. 17, p.2).

On or about November 4, 2013, mediator Gary S. Hemric provided notice that the parties' attempt to settle this matter had reached an impasse. (Document No. 37).

"Plaintiff's Second Motion For Summary Judgment And Memorandum Of Law In Support" (Document No. 41) was filed on December 3, 2013. "Defendant's Motion For Summary Judgment" (Document No. 47) was then filed on January 15, 2014. Also pending is "Defendant's Motion To Strike Plaintiff's 'Affidavits'" (Document No. 51) filed on February 5, 2014. These motions have been fully briefed and are now ripe for review and disposition.

## II.    STANDARD OF REVIEW

The standard of review here is familiar.  Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.R.Civ.P. 56(a).  The movant has the "initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (internal citations omitted).  Only disputes between the parties over material facts (determined by reference to the substantive law) that might affect the outcome of the case properly preclude the entry of summary judgment.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute about a material fact is "genuine" only if the evidence is such that "a reasonable jury could return a verdict for the nonmoving party."  Id.

Once the movant's initial burden is met, the burden shifts to the nonmoving party.  Webb v. K.R. Drenth Trucking, Inc., 780 F.Supp.2d 409 (W.D.N.C. 2011).  The nonmoving party opposing summary judgment "may not rest upon the mere allegations or denials of his pleading, but ... must set forth specific facts showing there is a genuine issue for trial."  Anderson, 477 U.S. at 248.  In deciding a motion for summary judgment, a court views the evidence in the light most favorable to the non-moving party, that is, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."  Anderson, 477 U.S. at 255.  At summary judgment, it is inappropriate for a court to weigh evidence or make credibility determinations.  Id.

When considering cross-motions for summary judgment, a court evaluates each motion separately on its own merits using the standard set forth above.  See Rossignol v. Voorhaar, 316 F.3d 516, 522 (4th Cir. 2003);  accord Local 2-1971 of Pace Int'l Union v. Cooper, 364 F.Supp.2d 546, 554 (W.D.N.C. 2005).  Both Plaintiff and Defendant have moved for summary judgment, and the Court will analyze each motion in turn.

### III.    DISCUSSION

**A.    Plaintiff's Motion For Summary Judgment**

"Plaintiff's Second Motion For Summary Judgment And Memorandum Of Law In Support" (Document No. 41) was filed on December 3, 2013.  Plaintiff's twenty-page motion includes approximately fourteen (14) pages dedicated to reciting portions of the Americans With Disabilities Act ("ADA") and an EEOC document titled "Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act, and less than three (3) pages addressing this lawsuit.  (Document No. 41, pp.3-19).  Plaintiff proffers several conclusory statements regarding her case, but offers little, if any, argument and factual and/or legal support for her claims.  (Document No. 41, pp.17-19).

For example, Plaintiff's motion contends that she is a person with a disability as defined by the ADA, but fails to state what that disability is or to offer any explanation of how her alleged disability affected her employment with Defendant.   (Document No. 41, p.17). Plaintiff's motion vaguely references medical records in her Rule 26 Initial Disclosures, but fails to attach such records to her motion, and fails to provide any specific citation to where those records may be found.  Id.

Because Plaintiff is appearing *pro se*, the Court has reviewed the entire record of this case, including the one hundred and fifty-two (152) pages of documents Plaintiff attached to her

initial summary judgment motion, in an attempt to find the "medical records" she relies on. (Document No. 15-1 and 15-2; Document No. 41, p.17). In the course of that review, the Court has not found any documents that establish that Plaintiff has a disability pursuant to the ADA, nor do the documents or Plaintiff's motion suggest that she provided these "medical records" to Defendant during her employment.

The medical records Plaintiff is apparently referencing in the instant motion first include several pages of "Patient Education Materials," which seem to primarily address stress and gastritis. (Document No. 15-1, pp.23-27). These documents were apparently provided by Carolinas Healthcare System on or about October 10, 2012. Id. One part defines gastritis as "a painful inflammation of the stomach lining" that "can be relieved with treatment." (Document No. 15-1, p.24). None of the materials provided by Plaintiff contend that gastritis is a disabling condition. (Document No. 15-1, pp.23-27).

Also attached to Plaintiff's original motion for summary judgment is a "Health Care Provider Certification (HCPC) For Medical Leave" dated October 11, 2012. (Document No. 15-1, p.44). Section B appears to have been completed by Rosemary Grullon, PA-C ("Grullon"), and under "diagnosis" states: "anxiety / GERD." Id. The HCPC further provides that the employee would be able to return to a normal work schedule on October 29, 2012. Id.

Next, Plaintiff's previous filing includes a "Patient Visit Summary" dated November 5, 2012. (Document No. 15-1, pp.46-47). This document states under "Problem List:" "anxiety; GAD – Generalized anxiety disorder; Gastritis; gerd." (Document No. 15-1, p.46). The "Patient Visit Summary" lists some prescriptions, but does not make any comment about work or disability. (Document No. 15-1, pp.46-47).

Notably, along with her "medical records" Plaintiff has also attached Dacus' October 19, 2012, "Reasonable Accommodation Request" letter. (Document No. 15-1, p.48). That letter specifically notes that despite the HCPC document referenced above, which only identifies a diagnosis, Defendant needed "a physician's statement attesting that you have a correlating medical need for which you cannot teach at Merry Oaks Elementary and a transfer to another work location is medically necessitated." Id.

A second HCPC form, dated November 5, 2012, was attached by Plaintiff, also indicating a diagnosis of "Anxiety & GERD" and estimating a return to work on November 19, 2012. (Document No. 15-1, p.50). This record also appears to fail to provide any information requested by CMS to assist it in accommodating Plaintiff's alleged disability. Id.

Finally, Plaintiff's first motion for summary judgment attached several pages of what appear to be treatment notes, dated between 2007 and 2012. (Document No. 15-1, pp.57-68). These documents consistently reference Plaintiff's on-going problems with anxiety and depression, but do not seem to offer any evidence that Plaintiff was "disabled" or required special accommodations for employment. Id.

In addition to Plaintiff's current motion making the conclusory assertion that she "is a person with a disability," she also contends that "Defendant failed to make reasonable accommodations to the known mental limitations of the Plaintiff." (Document No. 41, p.17). Plaintiff's motion further contends that Defendant's inquiries into the nature and extent of Plaintiff's alleged disability were discriminatory pursuant under the ADA. Id.

Although Plaintiff asserts that her "mental limitations" were "known" to the Plaintiff, Plaintiff fails to support such assertion with any facts. Id. To the extent Plaintiff is relying on the "medical records" discussed by the Court above, none of those documents appear to describe

Plaintiff's alleged "mental disability" or "mental limitations," or provide any evidence that Defendant was aware of Plaintiff's mental limitations.

Plaintiff's "…Motion For Summary Judgment…" concludes that Defendant is liable to Plaintiff for compensatory damages of $2,212,048.60, and that because Defendant "intentionally engaged in and is intentionally engaging in an unlawful employment practice charged in the Complaint," the Court should also award punitive damages for a total award to Plaintiff of $4,424,097.20.  (Document No. 41, p.19).

In response to Plaintiff's "…Motion For Summary Judgment…" Defendant provides a thorough analysis of Plaintiff's claims for (1) failure to provide reasonable accommodation and (2) constructive discharge.  (Document No. 45, pp.6-20).  Defendant argues that Plaintiff cannot prevail on her motion "as she has failed to meet her burden as the moving party under Rule 56(c) of the Federal Rules of Civil Procedure."  (Document No. 45, p.6).

**1. Failure to Accommodate**

Defendant acknowledges that the ADA prohibits discrimination against a "qualified individual with a disability," including a failure to make a reasonable accommodation. (Document No. 45, p.6) (citing 42 U.S.C. § 12112 (b)(5)).  Defendant contends that to establish a *prima facie* case of failure to accommodate,

> an employee must show "(1) that he was an individual who had a disability within the meaning of the statute;  (2) that the [employer] had notice of his disability;   (3) that with reasonable accommodation he could perform the essential functions of the position . . .;  and (4) that the [employer] refused to make such accommodations."

(Document No. 45, pp.6-7) (quoting Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001)).

Defendant first argues that Plaintiff's motion fails to present evidence that she is a person with a disability as defined by the ADA. (Document No. 45, p.7). Rather, Defendant contends that it is undisputed that the only document Plaintiff submitted to Defendant from a medical provider regarding her request to transfer as an accommodation was the HCPC form discussed above. Id. As previously noted, that document merely states a "diagnosis" of "anxiety / GERD." Id. Moreover, Defendant argues that the HCPC document is inconsistent with the condition Plaintiff alleges is her disability in the Complaint – "Generalized Anxiety Disorder." (Document No. 45, pp.7-8); see also (Document No. 4, p.2). Defendant concludes that Plaintiff has not provided sufficient "evidence of a mental or physical impairment that substantially limits one or more life activities." (Document No. 45, p.8) (citing Scheerer v. Potter, 443 F.3d 916, 919 (7th Cir. 2006) and Lyons v. Shinseki, 454 Fed.App'x. 181, 183 (4th Cir. 2011)).

Next, Defendant argues that Plaintiff failed to provide notice of a disability. (Document No. 45, p.9). Instead, Plaintiff only provided a "diagnosis." Id. Defendant asserts that despite repeated requests, Plaintiff failed to provide information about her condition that would allow Defendant to determine Plaintiff's ability to perform her job or how she might be accommodated. (Document No. 45, p.10).

Defendant also argues that Plaintiff's motion fails to show that she could establish the third element of her claim - that with a reasonable accommodation she could perform the essential functions of her position. (Document No. 45, p.10). Plaintiff did not provide any documentation from a medical provider stating she could perform her job with reasonable accommodation. Id. Defendant asserts that it is unclear how transfer to another school, even *if* transfer to another school was a reasonable accommodation, would allow Plaintiff to perform her essential job functions. Id.

Lastly, Defendant makes a compelling argument that Plaintiff has not shown that Defendant refused to make a reasonable accommodation. (Document No. 45, pp.11-17). In most pertinent part, Defendant notes that it did not refuse to provide an accommodation. (Document No. 45, p.13). Rather, Defendant sought basic information about Plaintiff's medical condition to assist in identifying a reasonable accommodation, and Plaintiff refused to respond. Defendant argues that such refusal cut off the "interactive process" that both employee and employer were obligated to participate in. (Document No. 45, p.14) (citing 29 C.F.R. § 1630(o)(3); Taylor v. Principal Fin. Group, Inc., 93 F.3d 155, 165 (5th Cir. 1996); and Haneke v. Mid-Atlantic Capital Mgmt., 131 Fed.App'x. 399, 400 (4th Cir. 2005)). Defendant concludes that as a matter of law Plaintiff "cannot prevail on her ADA reasonable accommodation claim where she has failed to provide information critical to determining an appropriate accommodation." (Document No. 45, p.17) (citing Berkner v. Blank, 2013 U.S.Dist. LEXIS 34320, at *22-23 (D.Md. March 11, 2013)).

## 2. Constructive Discharge

To the extent Plaintiff has stated a claim for constructive discharge, and/or seeks summary judgment on that claim, Defendant argues that Plaintiff's claim fails for several reasons. (Document No. 45, p.17).

First, Defendant asserts that Plaintiff failed to exhaust her administrative remedies because she did not include a constructive discharge/dismissal claim in her EEOC Charge. Id.; see also, (Document No. 4-1, p.1). According to Defendant, under circumstances such as those presented in this case

> the claim is barred and the Court lacks subject matter jurisdiction
> over it. See e.g., Jones v. Calvert Group, Ltd., 551 F.3d 297, 300
> (4th Cir. 2009); Chacko v. Patuxent Inst., 429 F.3d 505, 509-510

(4th Cir. 2005). The scope of the plaintiff's claims in a lawsuit following the filing of an EEOC Charge are confined by the Charge; if a claim is outside the scope of the Charge, then it is procedurally barred. Id.

(Document N. 45, p.17).

In addition, Defendant argues that Plaintiff "has forecast no evidence that Defendant discriminated against her on the basis of her disability," and "no evidence that Defendant acted deliberately to induce her to quit." (Document No. 45, p.19). As such, Defendant effectively contends that Plaintiff cannot prevail on a claim of constructive discharge. (Document No. 45, pp.17-19).

Finally, Defendant notes that the Fourth Circuit has held in the specific context of an ADA claim of constructive discharge that only a "complete failure to accommodate, in the face of repeated requests, might suffice as evidence to show the deliberateness necessary for constructive discharge." (Document No. 45, p.10) (quoting Johnson v. Shalala, 991 F.2d 126, 132 (4th Cir. 1993)). Defendant argues that "Plaintiff cannot even establish a failure to accommodate, let alone a complete failure in the face of repeated requests." Id.

"Plaintiff's Reply…" appears to assert that she provided sufficient evidence of her disability and need for accommodation with the HCPC "form containing 'the diagnosis' previously communicated to Ms. Dacus, which was Generalized Anxiety Disorder (anxiety) and the stress reaction gastric esophageal reflux disease (GERD) that was significantly disrupting Plaintiff's major life activities…." (Document No. 46, p.1). Plaintiff suggests that the HCPC form was adequate documentation for her employer to know that she has an ADA disability and that disability necessitated a reasonable accommodation. Id. The undersigned respectfully disagrees.

14

As an initial matter, Plaintiff overstates the information conveyed by the HCPC document made available to Defendant on or about October 18, 2012. See (Document No. 15-1, p.44). Contrary to Plaintiff's argument, the HCPC document *only* provides that Plaintiff had a "diagnosis" of "anxiety / GERD." Id. That document makes no mention of "Generalized Anxiety Disorder," which is what Plaintiff now claims is her disability, and also fails to define GERD. Id. see also, (Document No. 4, p.2). This document Plaintiff relies so heavily upon also makes no statement that Plaintiff's anxiety / GERD substantially limits her major life activities. Id. At most, the HCPC form provides evidence that Plaintiff might need to miss work through October 28, 2012. Id.

Next, the undersigned observes that although Plaintiff seems to argue that Defendant's requests for additional medical information were unnecessary and/or discriminatory, she includes a significant amount of language in her own motion for summary judgment supporting such requests. Plaintiff apparently quotes this language from the EEOC's Enforcement Guidance on Reasonable Accommodation and Undue Hardship Under the Americans with Disabilities Act. (Document No. 41, pp.10-17). For example, Plaintiff's own motion provides:

> While an individual with a disability may request a change due to a medical condition, this request does not necessarily mean that the employer is required to provide the change. A request for reasonable accommodation is the first step in an informal, interactive process between the individual and the employer. In some instances, before addressing the merits of the accommodation request, the employer needs to determine if the individual's medical condition meets the ADA definition of "disability," a prerequisite for the individual to be entitled to a reasonable accommodation.
> . . .
> An employer also may request reasonable documentation that the individual has an ADA disability and needs reasonable accommodation.
> . . .

> … the employer may ask the individual for reasonable documentation about his/her disability and functional limitations.
>
> . . .
>
> An employer may require that the documentation about the disability and the functional limitations come from an appropriate health care or rehabilitation professional.

(Document No. 41, pp.11-13).

"Plaintiff's Reply…" further suggests that Defendant knew that Plaintiff was a qualified individual with a disability because of "the comprehensive medical history" and two HIPPA authorization forms provided during discovery. (Document No. 46, p.3). However, Plaintiff does not allege or explain how this information provided during discovery in this lawsuit gave Defendant notice in or about September – November 2012 that Plaintiff had a disability. Even if the cited information establishes Plaintiff suffers a disability, which is questionable, it does not support Plaintiff's discrimination claim by showing that Defendant had notice of Plaintiff's disability during the time period relevant to the claim(s) in this lawsuit.

In short, the undersigned finds Defendant's arguments and authority opposing "Plaintiff's Second Motion For Summary Judgment…" to be convincing, and that Plaintiff has failed to effectively rebut those arguments or authority. (Document Nos. 45, 46). The Court cannot find that Plaintiff has shown "that there is no genuine dispute as to any material fact and [she] is entitled to judgment as a matter of law;" therefore, Plaintiff's motion will be denied. Fed.R.Civ.P. 56(a).

**B.      Defendant's Motion For Summary Judgment**

"Defendant's Motion For Summary Judgment" (Document No. 47) and "…Memorandum Of Law In Support…" (Document No. 48), along with excerpts from Plaintiff's deposition (Document No. 47-1) and the affidavits of Steffes (Document No. 47-2), Hager (Document No.

47-3), Dacus (Document No. 47-4), and Michael Provisierrio ("Provisierrio") (Document No. 47-5), were filed on January 15, 2014. Defendant contends that the pleadings, Plaintiff's deposition, and the affidavits "show that there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law." (Document No. 47, p.1).

For the most part, Defendant's motion echoes the arguments and authority it presented in its "…Response In Opposition To Plaintiff's Motion For Summary Judgment" (Document No. 45) discussed above. Defendant again focuses on Plaintiff's failure to establish the elements for a claim that Defendant failed to accommodate Plaintiff under the ADA. Namely, that Plaintiff did not show

> (1) that [s]he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of h[er] disability; (3) that with reasonable accommodation [s]he could perform the essential functions of the position . . .; and (4) that the [employer] refused to make such accommodations.

(Document No. 48, pp.6-7) (quoting Rhoads v. F.D.I.C., 257 F.3d 373, 387 n.11 (4th Cir. 2001)). Defendant also again effectively addresses Plaintiff's constructive discharge claim, arguing primarily that Plaintiff failed to exhaust her administrative remedies for such a claim. (Document No. 48, p.18-23). As noted above, these arguments by Defendant are persuasive. (Document Nos. 45 and 48).

Defendant's motion makes the additional argument that any purported claim of harassment/hostile work environment also must fail. (Document No. 48, pp.23-24). Defendant first notes that although Plaintiff's Complaint alleges "harassment," she does not specifically allege a harassment (hostile work environment) claim. (Document No. 48, p.6); see also (Document No. 4). The elements Plaintiff must prove to establish a hostile work environment are:

> (1) [s]he is a qualified individual with a disability;  (2) [s]he was subjected to unwelcome harassment;  (3) the harassment was based on [her] disability;  (4) the harassment was sufficiently severe or pervasive to alter a term, condition, or privilege of employment; and (5) some factual basis exists to impute liability for the harassment to the employer.

(Document No. 48, p.23) (quoting Fox v. G.M.Corp., 247 F.3d 169, 177 (4th Cir. 2001)).

Defendant acknowledges that Plaintiff alleges harassment by some of Defendant's staff members, but asserts that there is no evidence that any of this treatment was because of, or in any way related to, Plaintiff's alleged disability.  (Document No. 48, pp.23-24).  Defendant argues that Plaintiff has not alleged harassment sufficiently severe to alter any term, condition, or benefit of her employment, and that it is undisputed that Defendant was working with Plaintiff to address her complaints about her supervisors and co-workers.  (Document No. 48, p.23).

In opposing Defendant's motion for summary judgment, Plaintiff re-asserts that Defendant is accused of discrimination under the ADA for failing to make reasonable accommodations to "the known physical or mental limitations of an otherwise qualified individual."  (Document No. 50, p.1).  Plaintiff's response goes on to acknowledge the elements of a failure to accommodate claim and a wrongful termination claim, consistent with those discussed above.  (Document No. 50, pp.2-3).  Plaintiff further notes that "[i]f a disabled employee shows that her disability was not reasonably accommodated, the employer will be liable only if it bears responsibility for the breakdown of the interactive process."  (Document No. 50, p.2) (citing Beck v. Univ. of Wisc. Bd. of Regents, 75 F.3d 1130, 1137 (7th Cir. 1996)).

Plaintiff contends that Defendant is responsible for the breakdown in the interactive process because it declined on November 9, 2012, to provide Plaintiff the specific

accommodation of transfer to another school.  Id.  Plaintiff argues that her request to transfer was a "reasonable accommodation" that Defendant refused to allow.  Id.

The undersigned observes that Plaintiff does not identify any evidence that transfer to another school was an appropriate or reasonable accommodation for her alleged disability.  The sole medical documents Plaintiff relies upon, the October 11, 2012 and November 5, 2012 HCPC forms, do not directly or indirectly establish that a transfer would have been a reasonable accommodation.  (Document No. 50, pp.11-12).  Rather, these forms indicate that it was necessary for Plaintiff to be absent from work for a limited period of time, but that she would be able to return to a "normal work schedule" on or about November 19, 2012. Id.  Notably, the November 9, 2012 letter from Dacus denied Plaintiff's request for transfer "based on the information you have provided thus far," but explicitly allowed "**workplace accommodation for an approved leave to cover your absences from October 30, 2012 through November 19, 2012**."  (Document No. 47-1, pp.45-46) (emphasis in original).

Plaintiff also continues to conclude that her "anxiety & GERD" diagnosis established an ADA disability.  (Document No. 50, p.2).  However, the HCPC forms do not support Plaintiff's contention that her condition disrupted her "major life activities such as breathing, sleeping, eating, digesting, thinking, working, concentrating." Id.

Plaintiff's response seems to argue that Defendant should have had knowledge of Plaintiff's alleged disability based on a "comprehensive medical history" provided with her Rule 26(a) initial disclosures in this lawsuit, and/or because she provided two HIPPA authorization forms on or about October 23, 2012.  (Document No. 50, pp. 3, 13-15).  The undersigned finds such an argument unavailing.  This evidence still does not show that Defendant had knowledge of an alleged disability during the relevant time period before Plaintiff resigned from CMS.

Even if Defendant had that "comprehensive medical history," it does not appear that those records support Plaintiff's claim that she was disabled. Moreover, neither these records, nor any other evidence forecast by Plaintiff, indicate that transfer from one school to another was a reasonable accommodation of her alleged disability, or that she was terminated or constructively discharged *because of her disability*.

"Defendant's Reply In Support Of Its Motion For Summary Judgment" (Document No. 53) was filed on February 5, 2014. In that reply, Defendant makes several brief arguments rebutting Plaintiff's response and bolstering its own motion for summary judgment. (Document No. 53).

First, Defendant notes that Plaintiff's response in opposition (Document No. 50) does not include Plaintiff's own affidavit, or any other form of sworn testimony or admissible evidence to support her "conclusory" assertions. (Document No. 53, p.1). "Plaintiff must point to specific facts, and cannot rely on conclusory assertions, in the face of a properly supported summary judgment motion." Id. (citing Coleman v. United States, 369 F.App'x 459, 461 (4th Cir. 2010)).

Next, Defendant refutes any suggestion by Plaintiff that Plaintiff's "diagnosis" established a disability within the meaning of the ADA. (Document No. 53, p.2). Defendant re-asserts that "Plaintiff cut off the interactive dialogue without providing any of the information Defendant requested . . . including the critical information of the limitations Plaintiff's condition placed on her ability to perform her job functions and of possible accommodations." (Document No. 53, pp.2-3) (citing Document No. 47).

Defendant also challenges Plaintiff's contention in her response that "[t]he medical necessity for the accommodation was made obvious by explicit written and verbal statements,

and should have been granted expeditiously in accordance with ADA legislation." (Document No. 53, p.3; Document No. 50, p.5). Defendant argues that

> [a]n employer is not required by the ADA to grant a particular accommodation the employee requests or prefers, or even the best possible accommodation; the employer is obligated to provide some reasonable accommodation. <u>See</u> <u>Walter v. United Airlines, Inc.</u>, 2000 U.S.App. LEXIS 26875, at *13 (4th Cir. 2000); <u>Crawford v. Union Carbide Corp.</u>, 1999 U.S.App. LEXIS 32483, at *13 (4th Cir. 1999). <u>See also</u> <u>Petty v. Freightliner Corp.</u>, 122 F.Supp.2d 666, 668-69 (W.D.N.C. 2000) (plaintiff asserted that there were job openings to which he could have been reassigned as a "reasonable accommodation"; Court held that even if open positions existed, the employer was not obligated to assign the plaintiff to such a position at the time plaintiff requested and the employer correctly engaged the plaintiff in the interactive dialogue).

(Document No. 53, p.3).

Finally, Defendant asserts that Plaintiff's response to its motion attempts to create issues of fact, but "does not create any genuine dispute of a fact that might affect the outcome of her lawsuit under the governing law." (Document No. 53, p.4). Defendant argues that Plaintiff's conclusory assertions are insufficient to meet her burden and that she has failed to show through affidavits or other verified evidence that a genuine dispute of material fact exists. <u>Id.</u> Defendant concludes that Plaintiff cannot forecast admissible evidence to support her claims in this action, and that Defendant has shown there is no genuine issue of material fact and that Defendant is entitled to judgment as a matter of law. (Document No. 53, pp.4-5).

The undersigned again finds Defendant's arguments and cited authority compelling. The Court agrees that Plaintiff has failed to show or forecast evidence that would support her discrimination claims. Rather, the record indicates that Plaintiff was a first-year teacher, with some history of anxiety and depression, who struggled in her first month in a full time teaching

position.  While there may be a dispute as to the adequacy of Plaintiff's performance and/or whether her supervisors appropriately and effectively supported her, there is no admissible evidence that:  Defendant knew Plaintiff was disabled under the ADA; Defendant discriminated against Plaintiff based on her alleged disability; Defendant deliberately made her working conditions intolerable in an effort to induce her to quit; or Defendant retaliated against Plaintiff for engaging in protected activity.

The undisputed facts here show that Defendant attempted to counsel and mediate Plaintiff's relationship with her supervisors through Dacus, an Employee Relations Specialist. See (Document No. 47-1).  Moreover, the admissible evidence is that Defendant, primarily through Dacus, attempted to engage Plaintiff in an interactive process to determine what, if any, accommodation was appropriate for Plaintiff, but that Plaintiff declined to fully participate in that process and resigned before that process was complete.  In fact, as noted above, Defendant granted Plaintiff a "workplace accommodation for an approved leave to cover [her] absences" and appeared open to considering a transfer, *if* Plaintiff could provide proper support for such request.  See (Document No. 47-1).  Plaintiff refused, and has consistently insisted that her diagnosis on the HCPC forms is sufficient to support her request for transfer, as well as her claims in this lawsuit.  Plaintiff has simply failed to forecast admissible evidence to adequately support the elements of any of her claims.

In sum, even viewing the evidence in the light most favorable to Plaintiff, the Court finds that Plaintiff has failed to set forth specific facts showing there is a genuine issue for trial, such that a reasonable jury could return a verdict for Plaintiff.  See Anderson, 477 U.S. at 248. Instead, Defendant has persuasively shown that it is entitled to judgment as a matter of law.

**C.** **Defendant's Motion To Strike**

Based on the foregoing, the undersigned will deny "Defendant's Motion To Strike Plaintiff's 'Affidavits'" (Document No. 51) as moot.

## IV.    CONCLUSION

**IT IS, THEREFORE, ORDERED** that "Plaintiff's Second Motion For Summary Judgment And Memorandum Of Law In Support" (Document No. 41) is **DENIED.**

**IT IS FURTHER ORDERED** that "Defendant's Motion For Summary Judgment" (Document No. 47) is **GRANTED**.

**IT IS FURTHER ORDERED** that "Defendant's Motion To Strike Plaintiff's 'Affidavits'" (Document No. 51) is **DENIED AS MOOT.**

**SO ORDERED**.

The Clerk of Court is directed to send a copy of this Order to Plaintiff by certified U.S. Mail, return receipt requested.

Signed: April 2, 2014

David C. Keesler
United States Magistrate Judge